UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: **10-CV-20554-HUCK/O'SULLIVAN**

MARK ROUSSO
   *and*
MARK KATSMAN

   *Plaintiffs,*

vs.

LIBERTY SURPLUS INSURANCE
CORPORATION,

   *Defendant.*
_____/

FILED by **GM** D.C.
ELECTRONIC

FEB 22, 2010

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# COMPLAINT

Plaintiffs, Mark Rousso and Mark Katsman (collectively, "the Policyholders"), sue Defendant, Liberty Surplus Insurance Corporation ("the Insurer"), and allege:

## NATURE OF ACTION, JURISDICTION AND VENUE

1. This is an action for damages for statutory bad faith pursuant to Section 624.155 of the Florida Statutes, arising out of the Insurer's failure to settle third-party claims against the Policyholders when it could and should have done so, had it acted fairly and honestly toward them and with due regard for their interests.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), (c)(1) (2005), as this is a suit between parties that are citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorney's fees.

3. The Policyholders are citizens of states other than the states in which the Insurer is incorporated and maintains its principal place of business.

4. Venue is proper in this Court, as the acts or omissions giving rise to this suit occurred in this District, the Insurer does business in this District, and the Insurer issued and delivered the insurance policy to the Policyholders in this District.

## THE PARTIES

5. During the period relevant to this action, Mark Rousso, a citizen of Florida, and Mark Katsman, a citizen of Florida, were two of the three equity partners of Roth Rousso & Katsman, LLP ("the Firm").

6. The Firm is a law firm organized as a Florida limited liability partnership with its principal place of business in Miami-Dade County, Florida.

7. The Firm, as an entity, is no longer actively conducting business and has no remaining assets.

8. The Insurer is a New Hampshire corporation, with its principal place of business at 175 Berkeley Street, Boston, Massachusetts. The Insurer engages in the business of selling contracts of insurance in the Southern District of Florida and elsewhere.

## FACTUAL ALLEGATIONS

### *The Insurance Contract*

9. The Insurer issued to the Firm, as "Named Insured," a Lawyers Professional Liability Policy bearing Policy No. EJE-B71-181555-018 (the "Policy"). A copy of the Policy is attached as Exhibit A.

10. According to the Policy, "if the Named Insured is a partnership, such partnership and each lawyer who is a partner thereof including any incorporated partner and each shareholder of any such incorporated partner" is an "Insured" under the Policy.

CASE NO.: _____

11. According to the Policy, "if the Named Insured is a professional corporation or professional association, such professional corporation or professional association and each lawyer who is a shareholder or member thereof" is an "Insured" under the Policy.

12. According to the Policy, "each lawyer employed by the Named Insured" is an "Insured" under the Policy.

13. Mark Rousso is an "Insured" under the Policy.

14. Mark Rousso is individually insured under the Policy, and thus has personal rights under the Policy.

15. Mark Katsman is an "Insured" under the Policy.

16. Mark Katsman is individually insured under the Policy, and thus has personal rights under the Policy.

17. The Policy incepted March 1, 2008, with a stated expiration date of March 1, 2009.

18. Under the Policy, the Insurer promises to "pay on behalf of each Insured all sums in excess of the Deductible amount and up to the Limits of Liability stated in the Declarations which the Insured shall become legally obligated to pay as damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD (i) caused by any act, error or omission for which the Insured is legally responsible; or (ii) because of personal injury[,] and, in each case, arising out of the tendering or failure to tender professional legal services."

19. The Insurer's duties under the Policy extend directly to Mark Rousso, as an individual.

20. The Insurer's duties under the Policy extend directly to Mark Katsman, as an individual.

21. The Policy has a stated limit of liability of $3,000,000 per claim and a $3,000,000 aggregate limit.

22. Under the Policy, "claim expenses," which include defense fees and costs, erode the limits of liability.

### *The Underlying Claims and Suits*

23. The Policyholders have been subjected to numerous third-party claims ("the Claims").

24. The Claims span from February 2009 to the present.

25. The Claims arise out of defalcations of the Firm's trust account funds by the Firm's former bookkeeper/office manager.

26. To date, the Policyholders have notified the Insurer of sixteen pending claims, one disputed claim, and six resolved claims.

27. All of the Claims seek damages that are covered under the Policy.

28. The Insurer has stated that the Claims exceed the stated Policy limits.

29. The Claims do, in fact, exceed the stated Policy limits.

30. The sixteen unpaid, pending claims are: (1) Jose Luis Cives (the "Republic Bank Action"); (2) Marina Shikhman (the "Citimortgage Action"); (3) Roykin Services, Inc./ Domo Wide, Inc. (the "Espirito Santo Bank Action"); (4) Alejandra M. Cordova Barrialis (the "Barrialis Claim"); (5) Edward Marcelo Groisman (the "Groisman Claim"); (6) Seymour International, Inc. (the "Seymour Claim"); (7) Sky Plaza, Ltd. (the "Sky Plaza Claim"); (8) Salomon Leizorek (the "Leizorek Claim"); (9) Marcela Dall Occhio (the "Dall Occhio Claim"); (10) Carlos Alberto Barragan Cianci (the "Cianci Claim"); (11) Francesco Cardiello (the "Cardiello Claim"); (12) Treasure Cove Associates, Ltd. (the "Treasure Cove Claim"); (13) Aurora Loan Services, LLC (the "Aurora Loan Claim"); (14) William Lobel (the "Lobel

Claim"); (15) Cooper City Commerce Park, Ltd. (the "Cooper City" Claim); and (16) Vue Venetian, LLC (the "Vue Venetian Claim").

31.  The one Claim disputed by the Policyholders involves Latin Biz Trading Co., Inc., 8 Acres Investments Corp., MSI Savannah Corp., and Fortunato O. Investments, Inc.

32.  The six paid, resolved Claims are: (1) G&L Real Estate Development, LLC (the "G&L Claim"); (2) Papin Ayrapetyan & Tatinger, LLC (the "Papin Claim"); (3) Green Fall Properties (the "Green Fall Claim"); (4) Jorge Santiago/ New Urban/ RFC Lake Worth, LLC (the "Santiago Claim"); (5) IndyMac Federal Bank/ Irina Olshansky (the "Olshansky Claim"); and (6) Civitas Place/ Robin S. Davis (the "Davis Action").

33.  The Policyholders paid part or all of the G&L, Papin, Green Fall, Santiago, and Olshansky Claims out of their own pockets.

34.  The Insurer has not reimbursed the Policyholders for those payments.

35.  The Insurer is obligated to reimburse the Policyholders for those payments under the Policy.

36.  The out-of-pocket payment of Claims by the Policyholders exceeds any and all deductibles under the Policy.

37.  The Insurer has issued payment for one Claim: the Davis Action.

### *Notice to the Insurer and Its Response*

38.  The Policyholders notified the Insurer of the Claims.

39.  The Policyholders' notification of the Claims to the Insurer was timely under the Policy.

40.  The Policyholders reported the first Claim to the Insurer in February 2009.

41.  In April 2009, the Insurer retained David P. Hartnett of Hinshaw & Culbertson, LLP, to defend the Policyholders subject to a reservation of rights.

42. In April 2009, the Insurer retained Michael J. McGirney ("McGirney") of Daniels, Kashtan, Downs, Robertson & McGirney, P.A., as coverage counsel for the Insurer.

43. As early as June 17, 2009, in a meeting among McGirney, the Policyholders, and their counsel, McGirney on behalf of the Insurer acknowledged that it was crucial that the Insurer promptly pay the Claims, in order to, among other things, preserve the Policyholders' ability to practice law.

44. During his June 17, 2009, meeting with the Policyholders, McGirney on behalf of the Insurer also assured the Policyholders that the Insurer would pay the Claims promptly.

45. During the June 17, 2009, meeting, McGirney on behalf of the Insurer also stated that the Insurer would soon issue a coverage position letter that was favorable to the Policyholders.

46. Despite these assurances, the Insurer took no apparent actions in connection with the Claims for an unreasonably long period of time.

47. The Insurer failed to timely act even though it knew that various third-party claimants had threatened to file lawsuits and Florida Bar complaints against the Policyholders if the Claims were not promptly resolved.

48. Exasperated by the Insurer's delaying tactics and its unwillingness to timely settle the Claims, the Policyholders filed a Civil Remedy Notice of Insurer Violations on July 29, 2009. A copy of the Civil Remedy Notice is attached as Exhibit B.

49. At the time the Policyholders filed the Civil Remedy Notice of Insurer Violations, more than five months had passed from the date that the Policyholders reported the first Claim.

50. The Insurer finally issued a reservation of rights letter on August 31, 2009. A copy of the August 31, 2009, reservation of rights letter is attached as Exhibit C.

CASE NO.: _____

51. By the time the Insurer issued its reservation of rights letter, more than 200 days had passed since the Policyholders reported the first Claim.

52. The Insurer's six-month delay in uttering its coverage position violates Section 626.9541(1)(i)(3)(e) of the Florida Statutes.

53. In its August 31, 2009, reservation of rights letter, the Insurer conceded that it owes the Policyholders defense and indemnity in connection with the Claims.

54. The Insurer's acts and omissions created unnecessary and unreasonable delays in resolving the Claims.

55. The unnecessary and unreasonable delays in resolving the Claims caused by the Insurer are the proximate cause of damages that the Policyholders have suffered and continue to suffer.

56. The Insurer's acts and omissions harmed each of the Policyholders as individuals.

57. The Insurer's acts and omissions that led to the unnecessary and unreasonable delays include the Insurer's failure to promptly act upon documentation and information provided by the Policyholders.

58. Instead of promptly acting upon documentation and information provided by the Policyholders, the Insurer stalled the claims investigation process by incessantly requesting more documentation and information from the Policyholders.

59. In some instances, the Insurer requested documents and information that already had been provided by the Policyholders.

60. The Insurer's requests for additional information were not accompanied by the reasons such information was needed, as required by Section 626.9541(1)(i)(3)(h) of the Florida Statutes.

61. Despite the Insurer's failure to provide a rationale for its document requests, the Policyholders continued to provide the Insurer with additional information relating to the Claims.

62. The Insurer's acts and omissions that led to the unnecessary and unreasonable delays include the Insurer's decision to replace its coverage counsel in the midst of handling the Policyholders' Claims.

63. The Insurer replaced McGirney with Peter Murphy and Francesca Ippolito-Craven of Kubicki Draper, P.A., in September 2009.

64. The Insurer's decision to switch counsel created further delay, as the new counsel's first act (in a letter dated September 4, 2009, but not faxed until September 21, 2009) was to request that the Policyholders provide "any and all documents you have in your possession to support claims asserted in this matter" – a request that necessarily included documents that the Policyholders already had provided to the Insurer months earlier.

65. The Insurer's acts and omissions that led to the unnecessary and unreasonable delays include the Insurer's failure to issue a retainer payment for at least one month after it decided to retain Beck, Villata & Co., P.C. ("Beck"), a forensic accounting firm, to confirm the amount of the defalcations and reconcile that amount with the asserted Claims.

66. The Insurer's acts and omissions that led to the unnecessary and unreasonable delays include the Insurer's chronic failure to communicate promptly and thoroughly with its Policyholders, in violation of Section 626.9541(1)(i)(3)(c) of the Florida Statutes.

67. Each of the Policyholders has suffered and continues to suffer damages as a result of the delay caused by the Insurer's acts and omissions.

68. As a foreseeable result of the Insurer's delay, the Insurer has placed its Policyholders' licenses to practice law, and thus their livelihoods, in jeopardy, as aggrieved claimants have filed complaints with the Florida Bar.

69. As a foreseeable result of the Insurer's delay, the Insurer damaged the Policyholders' credit reputations.

70. As a foreseeable result of the Insurer's delay, the Policyholders were forced to secure loans and/or withdraw funds from their personal savings accounts and/or deplete business capital.

71. As a foreseeable result of the Insurer's delay, the Claims have become and are becoming more expensive to settle, as interest, costs, and attorney's fees continue to accrue.

72. As a foreseeable result of the Insurer's delay, the total cost to resolve the Claims now exceeds the stated Policy limits.

73. As a foreseeable result of the Insurer's delay, the Insurer has exposed its Policyholders to consequential damages, arising out of foreclosure actions and other affected business transactions, among others.

74. As a foreseeable result of the Insurer's delay, the Insurer has eroded and continues to erode the Policy limits by incurring substantial defense costs.

75. As a foreseeable result of the Insurer's delay, the Insurer exposed and continues to expose its Policyholders to unnecessary litigation.

76. As a foreseeable result of the Insurer's delay, claimants have become and are becoming more agitated and have and are resigning to pursue their claims to the fullest extent possible.

77. As a foreseeable result of the Insurer's delay, the Insurer potentially jeopardized the Policyholders' claims against Mellon United National Bank ("the Bank") by refusing to indicate whether it intended to pursue a subrogation claim against the Bank.

78. As a foreseeable result of the Insurer's delay, the Insurer has exposed its Policyholders to a substantial loan foreclosure action brought by the Bank.

## THE INSURER'S CONFESSION OF JUDGMENT

79. Under Florida law, the Insurer's payment for the Davis Action amounts to an admission of coverage under the Policy for the amount tendered.

80. By admitting coverage, the Insurer has confessed judgment that the Policy provides coverage for the Claims.

## CONDITIONS PRECEDENT

81. Because the Insurer has confessed judgment that the Policy provides coverage for the Claims, the Policyholders' claims against the Insurer for bad faith under Section 624.155 of the Florida Statutes are ripe.

82. On July 29, 2009, the Policyholders served the Insurer with a Civil Remedy Notice of Insurer Violations.

83. More than sixty (60) days have passed and the Insurer has not cured the circumstances giving rise to the violations enumerated in the Civil Remedy Notice of Insurer Violations.

84. All conditions precedent to bringing this action have been performed, been waived, or have otherwise occurred.

85. The Policyholders have engaged the undersigned counsel to represent them in this action, and have agreed to pay counsel a reasonable fee for services rendered.

## COUNT I – STATUTORY BAD FAITH

86. The Policyholders reallege and incorporate Paragraphs 1 through 85 as though fully set forth herein.

87. As a result of the foregoing allegations, whether taken separately or together, the Insurer violated Sections 624.155 and 626.9541 of the Florida Statutes, through the following acts and/or omissions:

    a. failing to attempt to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly towards its insureds and with due regard for its insureds' interests;

    b. making misrepresentations to the insureds and other persons/entities involved with the claims, for the purpose and with the intent of effecting settlement of the claims under the policy on less favorable terms than those provided in, and contemplated by, the policy;

    c. on informed belief, failing to adopt and implement standards for the proper investigation of claims;

    d. failing to acknowledge and act promptly upon communications with respect to claims;

    e. failing to affirm or deny full or partial coverage of the claims, and, as to partial coverage, the dollar amount or extent of coverage;

    f. failing to promptly provide a reasonable written explanation of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement;

    g. failing to promptly notify its insureds of any additional information necessary for the processing of the claims; and/or

    h. failing to clearly explain the nature of the requested information and the reasons why such information is necessary.

88. On informed belief, the acts complained of herein constitute the Insurer's general business practices in that such acts:

    a. were expressions of, and in compliance with, the Insurer's standard company practices and procedures;

    b. are said by the Insurer to be in conformity with what it contends are standard and good faith practices;

    c. occur with such frequency as to indicate a general business practice; and

    d. are emblematic of the Insurer's corporate practices designed to delay the resolution of legitimate claims and take maximum advantage of policyholder exhaustion in order to cause them to forgo valid claims and/or resolve such claims for less than their fair value.

89. The Insurer's actions and conduct in relation to this matter have been in reckless disregard for the rights of the Policyholders, and/or constituted willful, wanton, and malicious conduct.

90. As a direct and proximate result of the Insurer's violations of Florida law, each of the Policyholders, as individuals, has been and continues to be damaged.

WHEREFORE, Plaintiffs, Mark Rousso and Mark Katsman, respectfully request that this Court enter a judgment against Defendant, Liberty Surplus Insurance Corporation, for all damages sustained by the Policyholders as a result of the Insurer's statutory violation(s), including compensatory and consequential damages, pre- and post-judgment interest thereon, attorney's fees pursuant to Section 624.155(4) of the Florida Statutes, court costs, as well as any other amounts deemed by the jury or this Court to be equitable, just, and proper.[1]

---

[1] After an appropriate investigation, the Policyholders may seek leave to amend to add a claim for punitive damages.

CASE NO.: _____

## TRIAL BY JURY

The Policyholders demand trial by jury of all issues so triable as a matter of right.

DATED this 22nd day of February, 2010.

Respectfully submitted,

**VER PLOEG & LUMPKIN, P.A.**

BY: _____
**R. Hugh Lumpkin**
Florida Bar No. 308196
rlumpkin@vpl-law.com
**Michael F. Huber**
Florida Bar No. 765171
mhuber@vpl-law.com
**Ashley B. Hacker**
Florida Bar No. 71924
ahacker@vpl-law.com

100 S.E. Second Street
Thirtieth Floor
Miami, Florida 33131
Telephone: (305) 577-3996
Facsimile: (305) 577-3558
*Attorneys for Plaintiffs*