## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.:  10-cv-20554-Huck/O'Sullivan

MARK ROUSSO and MARK KATSMAN,

                Plaintiffs,

vs.

LIBERTY SURPLUS INSURANCE
CORPORATION,

                Defendant.

_____/

### ORDER ON MOTION TO DISMISS

Before the Court is Defendant Liberty Surplus Insurance Corporation's motion to dismiss (D.E. #13) Mark Rousso and Mark Katsman's single-count complaint (D.E. #1) seeking damages for bad-faith insurance coverage.  The Court has reviewed the motion, the record, heard the argument of counsel at two hearings, and is otherwise duly advised in the premises.  For the reasons set forth below, the Court concludes that the Defendant's motion should be granted, and the complaint should be dismissed without prejudice.

### BACKGROUND

The Plaintiffs' complaint is grounded in Fla. Stat. § 624.155 which allows a plaintiff to recover from an insurer where the insurer violates certain statutory provisions identified in § 624.155(1)(a) or commits certain acts enumerated in § 624.155(1)(b).

In this case, the Plaintiffs are two of three equity partners in the now-defunct law firm of Roth Rousso & Katsman LLP.  The Defendant issued a "Lawyers Professional Liability Policy," effective from March 1, 2008, through March 1, 2009, to the law firm under which each partner of the firm was an insured.  Under the policy, the Defendant agreed to "pay on behalf of each Insured all sums in excess of the Deductible amount up to the Limits of Liability stated in the Declarations which the Insured shall become legally obligated to pay as damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD (i) caused by any act, error or omission for which the Insured is legally responsible; or (ii) because of personal injury[,] and, in each case, arising out of the tendering or failure to tender professional legal services."  Complaint at ¶ 18 (all-capital typeface in original).  The policy limit is $3 million.

Since February 2009, the partners of the law firm have been subjected to numerous third-party claims because the firm's former bookkeeper and office manager misappropriated funds from the firm's trust account.  When the Plaintiffs filed their complaint, they were aware of twenty-three claims in total: seventeen of these claims remained pending (though the Plaintiffs disputed the validity of one of the claims) and six claims had already been resolved.  *See* Complaint at ¶¶ 26 & 30-32.  Although the complaint does not specify the precise amount of the pending and resolved claims, the Plaintiff alleged (and the parties agree) that the claims exceed the $3 million insurance policy limit.  As it turns out, according to the motion to dismiss, the third-party claims against the policy exceed the policy limit by a substantial amount—more than $2 million.  The Plaintiffs do not contest this aspect of the motion to dismiss in their response.

According to the complaint, the Plaintiffs timely notified the Defendant of their claims.  In April 2009, the Defendant retained an attorney to defend the Plaintiffs subject to a reservation of rights.  At the same time, the Defendant retained coverage counsel.  As alleged in the complaint, the Defendant's coverage counsel agreed that the Defendant had to promptly pay the claims so that the Plaintiffs could continue practicing law.  Coverage counsel also stated that it would soon issue a coverage position letter that was favorable to the Plaintiffs.  Nevertheless, the Defendant did not pay the claims and claimants were threatening to sue the Plaintiffs and file complaints with the Florida Bar.

That is when "[e]xasperated by the [Defendant's] delaying tactics and its unwillingness to timely settle the [c]laims, the [Plaintiffs] filed a Civil Remedy Notice of Insurer Violations on July 29, 2009." *Id.* at ¶ 48.  On August 31, 2009, six months after the Plaintiffs first reported their claim, the Defendant issued its coverage position conceding that it owed the Plaintiffs defense and indemnity in connection with the claim.  The Plaintiffs claim this delay in stating a coverage position violates Fla. Stat. § 626.9541(1)(i)(3)(e) which makes it an "unfair claim settlement practice" to fail to affirm or deny full or partial coverage of claims.  In sum, the Plaintiffs argue that the Defendant's foot-dragging caused the Plaintiffs financial and reputational harm and exposed them to otherwise avoidable claims by clients affected by the theft of the funds.  According to the Plaintiffs, the Defendant's foot-dragging was unnecessary and contrary to the Defendants obligation to act in good faith towards its insureds.

The Defendant argues that the complaint should be dismissed for three reasons.  First, the Defendant argues that the Plaintiffs failed to satisfy a necessary condition precedent to a statutory bad-faith action because their civil remedy notice lacks the detail or information required by Fla. Stat. § 624.155.  Second, the Defendant argues that this lawsuit is premature because some claims remain unresolved and, until there is a determination of liability and damages, a claim for bath faith is not ripe.  Finally, the Defendant argues that the case was filed without two indispensable parties, specifically Leonard Roth, the Plaintiffs' former law partner, and the law firm itself.

In response, the Plaintiff argues that the civil remedy notice is adequate because it specified the Defendant's violations as required by law; the bad-faith action is ripe because the Defendant has issued payment for some of the underlying claims, does not dispute that the policy covers all claims within the policy limits, and has committed to pay the policy limits; and the law firm and Roth are not indispensable parties because all relief can be accorded between the Plaintiffs and Defendant without prejudice to the parties or non-parties.

The Court's decision below rests on the adequacy of the civil remedy notice.[1]  The civil remedy notice was submitted on a form created by the Florida Department of Financial Services—the state agency responsible for oversight of the insurance industry.  One section of the civil remedy notice instructs the complainant to "describe the facts and circumstances giving rise to the insurer's violation as you understand them at this time" "to enable the insurer to investigate and resolve your claim." Complaint at Exhibit B (D.E. #1-4).  In response to that prompt, the Plaintiffs wrote the following:

> The named insured's business manager absconded with millions of dollars from trust intended for real estate transactions.  The partners of the firm have advanced from their own pockets money to avoid suits and claims.  Even though the insurer was timely notified of more than 15 claims and several lawsuits, the insurer has failed despite repeated demand to provide a coverage position, to settle suits and claims, or to response to repeated pleas for assistance.  The partners are being investigated by the Bar, suits and claims are presenting an added risk, all because of delay.  The suits and claims must promptly be resolved, a coverage position provided (if not waived) and the partners reimbursed moneys paid out to forestall liability, together with interest, fees and costs.

*Id.*

## STANDARD OF REVIEW

In reaching the conclusion below, the Court applies the standard of review that is generally applicable to motions to dismiss.  *See U.S. Distribs., Inc. v. Block*, No. 09-21635-CIV, 2009 WL 3295099, *4 (S.D. Fla. Oct. 13, 2009) (setting forth the applicable standard of review).

## ANALYSIS

Under Fla. Stat. § 624.155, a bad-faith claimant must file a notice with the Florida Department of Financial Services on a form provided by the department at least 60 days before filing a lawsuit.  Fla. Stat. § 624.155(3)(a)-(b).  This notice is commonly referred to as the "civil remedy notice."  Its purpose is to give the insurer a final opportunity to settle an insured's claim and avoid unnecessary bad-faith litigation.

---

[1]        In limiting its decision to the civil remedy notice issue, the Court does not intend to pass judgment on the merits of the Defendant's other arguments.  Indeed, as the Court has indicated at the hearings held on this matter, if the Plaintiffs were to re-file their complaint after complying with the requirements of § 624.155, the Court would require the Plaintiffs to join the omitted partner of Roth, Rousso & Katsman LLP or, if Roth refuses to voluntarily participate in the lawsuit, the Court would order Roth's joinder.

*See Heritage Corp. of S. Fla. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn.*, 580 F. Supp. 2d 1294, 1299-300 (S.D. Fla. 2008) citing *Lane v. Westfield Ins. Co.*, 862 So. 2d 774, 779 (Fla. 5th DCA 2003).

Section 624.155(3)(b) requires the prospective bad-faith claimant to provide certain information "with specificity." The claimant must identify "[t]he statutory provision, including the specific language of the statute, which the authorized insurer allegedly violated" and set forth "[t]he facts and circumstances giving rise to the violation." Fla. Stat. § 624.155(3)(b)(1)-(2). Under the statute, there is no claim if "within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected." Fla. Stat. § 624.155(3)(d). In this respect, the statute requires the prospective claimant to advise the insurer of precisely how the "circumstances giving rise to the violation" may be corrected; a failure to identify a cure renders the civil remedy notice insufficient. *See, e.g., Heritage Corp.*, 580 F.Supp.2d at 1299 (finding that a civil remedy notice was inadequate when it failed to apprise the insurer of how to cure the alleged violations); *316, Inc. v. Maryland Cas. Co.*, 625 F. Supp. 2d 1187, 1193 (M.D. Fla. 2008) (a civil remedy notice is inadequate when it is "written in such general terms that it [gives] no actual notice of the specific actions that [the insurer] could have undertaken to cure" the alleged violation); *Valenti v. Unum Life Ins. Co. of Am.*, No. 8:04-cv-1615-T-30TGW, 2006 WL 1627276, *2 (M.D. Fla. June 6, 2006) (civil remedy notice was inadequate when it failed to "identify what conduct of [d]efendant's must be cured").

As a general matter under Florida law, where a statute creates a new remedy, the statute must be strictly construed. *See, e.g., Aetna Cas. & Sur. Co. v. Buck*, 594 So. 2d 280, 281 (Fla. 1992) (stating in a non-insurance context that a person seeking the benefit of a statutorily created remedy had to strictly comply with the requirements of the statute because the remedy is "purely a creature of statute"). The Florida Supreme Court has specifically applied this rule of construction to § 624.155. *Talat Enters., Inc., v. Aetna Cas. & Sur. Co.*, 753 So. 2d 1283-84 (Fla. 2000) (a statute in derogation of common law must be strictly construed and, in the case of bad-faith claims, there is no civil remedy until the bad-faith claimant complies with § 624.155). Therefore, in the bad-faith context, a claimant that fails to adhere to the notice requirements of § 624.155 cannot state a claim for relief under that statute.

In this case, the Plaintiffs' civil remedy notice falls short of the specificity requirements imposed by § 624.155. First, in the section of the form in which the insured is asked to identify the reasons for filing a civil remedy notice, the Plaintiffs list "claim delay," "claim denial," "unfair trade practice," and "unsatisfactory settlement offer" without further elaboration. In the following section which asks the insured to "indicate all statutory provisions alleged to have been violated," the Plaintiffs identify Fla. Stat. §§ 624.155(1)(b)(1); 626.9541(1)(i)(2); and 626.9541(1)(i)(a), (c), and (e)-(h). Next to each identified statute, the Plaintiffs set forth the text of the cited statute. Later on, the insured is asked to "describe the facts and circumstances giving rise to the insurer's violation as [the insured] understands them at this

4

time" so that the insurer may "investigate and resolve [the insured's] claim."   In response to that requirement, the Plaintiffs included the paragraph quoted in the "Background" section of this order.

These uninformative recitations do not meet the requirements of § 624.155 because they do not specifically inform the insurer of the facts underlying the alleged violations or the corrective action that the insurer needed to take to remedy the alleged violations.   The statement in the civil remedy notice informs the Defendant that it has failed to (1) provide a coverage position, (2) settle suits and claims, or (3) respond to repeated pleas for assistance.   These alleged violations do not match up with the statutes that the Plaintiffs identified earlier in the civil remedy notice.   Without further detail about the circumstances surrounding its alleged failure to provide a coverage position, the Defendant lacks information to decide how it violated any of the statutes cited earlier in the notice.   The Plaintiffs do not identify which statute the Defendant violated by failing to provide a coverage position, whether it eventually provided a coverage position (it did), and how long it took to provide that coverage position, or whether the Plaintiffs made a written request to the Defendant for a coverage position.   Similarly, an insurer does not have an unqualified obligation to settle suits and claims.   Under the policy, for instance, the Defendant has the right to investigate claims.   *See, e.g.,* Exhibit 1-3 (Policy) at § I.B ("The Company shall have the right to make any investigation it deems necessary . . . .").   Further, an insurer violates Florida law only if it does not make a *good faith* effort to settle claims when it could have and should have under all of the circumstances.   *See* Fla. Stat. § 624.155(1)(b)(1).   In this case, the Plaintiffs do not explain how or identify which claims or suits the Defendant responded to in a manner that was contrary to good faith, unfair, or dishonest.   This vagueness continues in the Plaintiffs' claim that the Defendant failed to respond to repeated pleas for assistance.   The insurer is left to wonder what assistance the Plaintiffs sought and how the insurance agreement required the insurer to render that assistance.

The Plaintiffs' civil remedy notice appears to be an effort to cover a lot of possibilities, some of which may not apply.   For instance, one of the stated reasons for the notice was "unsatisfactory settlement offer."   But the remainder of the notice fails to discuss any settlement offer, inadequate or otherwise. There is also no mention of a denied claim, even though one of the reasons for the issuance of the notice was "claim denial."   Similarly there is no discussion of how the insurer violated § 626.9541(1)(i)(2) by making a material misrepresentation, § 626.9541(1)(i)(3)(a) by failing to adopt and implement standards for investigating claims, § 626.9541(1)(i)(3)(c) by failing to acknowledge and act promptly upon communications regarding claims, § 626.9541(1)(i)(3)(g) by failing to promptly notify the insured of any additional information necessary to process the claim, or § 626.9541(1)(i)(3)(h) by failing to clearly explain the nature of requested information and why that information is necessary.   In short, the civil remedy notice reflects a shotgun-blast effort to hit a lot of targets with a single salvo.   This approach is contrary to the purpose of the statute.   The civil remedy notice must reflect a good-faith effort to inform

the insurer of how it has fallen short of its obligations under the policy and what it can do to fix its shortcomings.  The civil remedy notice is not the place for posturing or advocacy, and an effort to overstate a claim in a civil remedy notice may end up undermining it.

As indicated above, the Plaintiffs' civil remedy notice also falls short because it fails to inform the Defendant about how it can fix the alleged violations.  A proposed solution is not only required under the statute, but particularly necessary in this atypical case[2] where the insurance claim consists of many third-party claims arising at different times that collectively far exceed the policy limits.  The only clear solution that the Plaintiffs propose is that the Defendant provide a coverage position.  Otherwise, the Plaintiffs request that the Defendant "promptly" resolve the claims and suits and reimburse the Plaintiffs for the moneys they have paid out.  This proposed solution is the functional equivalent of "pay me everything I've asked for."  Insurers are not required to pay any amount demanded by their insureds to avoid a bad-faith claim.  *316, Inc.*, 625 F. Supp. 2d at 1194.  Moreover, the Plaintiffs do not identify which claims are to be paid and in what amounts, which claims are not to be paid, or how the $3 million should be prorated among the various claims.  Therefore, the Defendant is not sufficiently informed as to how it may remedy its alleged failures to abide by its obligations as an insurer.  After reviewing the civil remedy notice in question, the Defendant could only conclude that the only solution to the Plaintiffs' complaint was to pay all third-party claims, including any disputed claims.  Obviously, the Defendant was not required to do this given that the Plaintiffs' claim far exceeded the policy limit.

Under § 624.155, the Defendant was entitled to a better proposed solution and more details about how the Defendant fell short of its obligations to provide coverage as required by the insurance agreement.  Accordingly, the Court concludes that the Plaintiffs' civil remedy notice is deficient and they have therefore failed to comply with a condition precedent to bringing a claim under § 624.155.

At oral argument the Court invited the Plaintiffs to submit a more detailed civil remedy notice.  The Plaintiffs', however, have refused to accept the Court's invitation.

---

[2]      A claim against a professional liability policy would typically consist of a single claimant necessitating a single investigation.  In this case there are twenty-three claims, at least one of which the insured disputes.  The Defendant was well within its rights to investigate the claims to ensure that it did not pay invalid claims.  Moreover, given that the claims far exceeded the coverage amount, the Defendant, together with the Plaintiffs, should have an opportunity to determine not only which claims to pay, but in what amount.  Or, if it is not possible to pay all legitimate claims (which appears to be the case), how to prorate payouts based on the policy limit.

## **CONCLUSION**

For all of the reasons stated above, the Court concludes that the motion to dismiss should be granted.  Therefore the Plaintiffs' complaint is dismissed without prejudice and, given the Plaintiffs' decision not to file a more specific civil remedy notice, this case is closed.

DONE and ORDERED in Chambers, Miami, Florida, August 13, 2010.


Paul C. Huck
United States District Judge

**Copies furnished to:**
All counsel of record.